UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**ORIGINAL**

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

*Nunc pro tunc*

| Case No. | CV 05-7263 DSF (JTLx) | Date | October 23, 2006 |
|---|---|---|---|

Title: *MH Systems, Inc. v. Peter McNulty, et al.*

Present: The Honorable DALE S. FISCHER, United States District Judge

| Paul D. Pierson | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING MH Systems, Inc. and Mo Husain's Joint Motion to Stay Action Until Completion by the United States Patent and Trademark Office of Pending Reissue Examination Proceeding

## I. INTRODUCTION

On October 6, 2005, Plaintiff MH Systems, Inc. ("MH Systems") initiated this action, alleging that Defendants Peter McNulty ("McNulty"), NEI Treatment Systems, LLC ("NEI"), the University of Maryland, Dr. Mario Tamburri, and Dr. Gregory Ruiz infringed U.S. Patent No. 6,761,123 (the "'123 Patent"), owned by Plaintiff. (Compl. ¶ 19.) Defendants Ruiz and University of Maryland were voluntarily dismissed on November 20, 2005, and January 17, 2006, respectively. On August 29, 2006, Defendants McNulty and NEI filed a Second Amended Answer and Second Amended Counterclaims ("SAC") against Plaintiff and Counterclaim Defendant Mo Husain (collectively, Counterclaim Defendants). As against MH Systems, Defendants seek declaratory judgments of non-infringement and patent invalidity. As against both MH Systems and Husain, Defendants assert counterclaims for trade libel, defamation, unfair competition, and intentional interference with prospective economic advantage. Now before the Court is MH Systems and Mo Husain's Joint Motion to Stay the Action Until Completion by the United States Patent and Trademark Office of the Currently Pending Reissue Proceeding Involving the Single Patent-in-Suit in This Litigation, filed September 26, 2006.

DOCKETED ON CM

JAN - 5 2007

BY _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

## II. LEGAL STANDARD

The Court has the inherent power to grant a stay. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); see also Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972). A stay may be appropriate when separate proceedings related to the suit are pending in another forum. Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979). This is true "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." Id. at 863-64.

When determining whether to grant a stay, a court must "weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55. "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law . . . ." Filtrol, 467 F.2d at 244 (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)). The party petitioning for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." Landis, 299 U.S. at 255. "Considerations such as these, however, are counsels of moderation rather than limitations upon power." Id.

In patent infringement actions, district courts have often stayed actions until pending administrative proceedings are resolved. Filtrol, 467 F.2d at 244. In determining whether to stay an action because of pending United States Patent and Trademark Office ("PTO") proceedings, courts consider (1) the stage of the litigation, including whether discovery is completed or nearly completed, (2) whether a stay will cause undue prejudice or tactical disadvantage to the nonmoving party, and (3) whether a stay will facilitate resolution of the action. See ASCII Corp. v. STD Entm't USA, Inc., 844 F.Supp. 1378, 1380-81 (N.D. Cal. 1994).

## III. DISCUSSION

A patentee may obtain reissue of a patent "[w]henever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent . . . ." 35 U.S.C. § 251. "In enacting the statute, Congress provided a statutory basis for correction of 'error'. The statute is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

remedial in nature, based on fundamental principles of equality and fairness, and should be construed liberally." In re Weiler, 790 F.2d 1576, 1579 (Fed. Cir. 1986). On the issuance of a reissued patent, the original patent is surrendered. 37 C.F.R. § 1.178(a).

Plaintiff filed a reissue application with the PTO on July 10, 2006. (Emrich Decl. ¶ 9.) Through the reissue application, Plaintiff seeks to (1) correct inventorship of the '123 Patent by including an inadvertently omitted co-inventor, (2) amend claims 1 and 7 of the '123 Patent, and (3) add three new claims to the Patent. (Emrich Decl. ¶ 9.)

### A. The Early Stage of the Litigation Weighs in Favor of Granting a Stay

Here, the comparatively early stage of the litigation weighs in favor of granting a stay. This action has been pending for approximately one year, but discovery is not yet complete. Although the discovery deadline of December 8, 2006 is less than two months away, only one deposition has been conducted: Henry Hunter – the inventor that Plaintiff seeks to add to the '123 Patent – was deposed on August 25, 2006. (Emrich Decl. ¶ 29.) Inventor and Counterclaim Defendant Husain has not yet been deposed (Cisclo Decl. ¶ 10; Emrich Decl. ¶ 29), yet Husain's alleged actions are central to Defendants' state law Counterclaims. To date, it does not appear that document production has occurred on a large scale (See Emrich Decl. ¶ 30), and there is no sign that document production has been protracted or costly. Further, no confidential, proprietary, or financial information has been exchanged (Emrich Decl. ¶ 31), and the Court has not entered a protective order governing the disclosure of such information. Initial expert reports need not be exchanged until January 22, 2007, and the deadline for expert discovery is March 23, 2007. The Court has not construed any of the claims. This matter is not set for trial until the summer of 2007.

### B. A Stay Will Not Unduly Prejudice Defendants or Create Tactical Disadvantage

Defendants assert that competitive injury will ensue if the stay is granted. Defendants maintain that MH Systems sent a letter to various government officials alleging that NEI's device was covered by the '123 Patent. (McNulty Decl. ¶ 11.) According to Defendants, these officials, and the organizations they represent, are crucial to NEI's success. (McNulty Decl. ¶ 11.) One of these individuals is Dr. Dorn Carlson, head of the Ballast Water Technology Program at the National Oceanic & Atmospheric Administration ("NOAA"). (McNulty Decl. ¶ 11.) Defendants claim that "Dr. Tamburri had been awarded grants from NOAA in each of the previous three years, and there was reason to expect that he would have received grants in 2005 had it not been for the correspondence from Mo Husain to Dorn Carlson." (McNulty Decl. ¶ 15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Similarly, Defendants assert that as a result of MH System's correspondence and statements, investors have put projects on hold and have withdrawn offers to NEI. (McNulty Decl. ¶ 13.)

While this Court finds Counterclaim Defendants' position concerning undue prejudice somewhat disingenuous, Defendants' proffered evidence of prejudice does not convincingly establish that a stay will have a significantly adverse effect on Defendants' relationships with government officials, investors, or potential business partners. Further, there is no indication that a stay will cause undue delay. The PTO accords high priority to reissue applications. 37 C.F.R. § 1.176(a) ("Applications for reissue will be acted on by the examiner in advance of other applications."). Among reissue applications, those involved in pending litigation are accorded priority status, particularly when the pending litigation has been stayed. Manual of Patent Examining Procedure (8th ed. 2001) ("MPEP") § 1442.03. Defendants do not establish that Counterclaim Defendants have engaged in dilatory tactics, or that they are seeking the stay for an improper purpose. Contrary to Defendants' representations, there is no evidence that Counterclaim Defendants are using the stay to "continue to hold the specter of litigation over NEI and its customers." (Opp'n 6.)

### C. A Stay Will Facilitate Resolution of This Case

Possible benefits of granting a stay pending examination of a reissue application include (1) "[a]ll prior art presented to the Court will have been first considered by the PTO, with its particular expertise," (2) "[m]any discovery problems relating to prior art can be alleviated by the PTO examination," (3) "[i]n those cases resulting in effective invalidity of the patent, the suit will likely be dismissed," (4) "[t]he outcome of the reexamination may encourage a settlement without the further use of the Court," (5) "[t]he record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation, (6) "[i]ssues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination," and (7) "[t]he cost will likely be reduced both for the parties and the Court." United Merchs. & Mfrs., Inc. v. Henderson, 495 F. Supp. 444, 447 (N.D. Ga. 1980); see also Fischer Controls Co. v. Control Components, Inc., 433 F. Supp. 581, 582 (S.D. Iowa 1977).

Here, a number of these benefits are to be gained if a stay is issued. Most significantly, the PTO will have occasion to examine all of the relevant prior art. The reissue application includes prior art references cited by Defendants in their Amended Counterclaims. These include (1) U.S. Patent No. 6,171,508, issued to Wilson Browning, Jr. on January 9, 2001, (2) U.S. Patent No. 6,821,442, issued to Barnaby Watten on November 23, 2004, (3) a technical note authored by Barry S. Payne, (4) an article by Barnaby Watten published in Elsevier Agricultural Engineering, and (5) an article by Defendant Tamburri published in Elsevier Marine Chemistry. (Documentary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**PRIORITY SEND**

Ev. Ex. 8, at 60-61; Amended Counterclaims ¶ 39.) Defendants' Second Amended Counterclaims disclose further prior art references, and MH Systems states that it will bring these additional references to the attention of the PTO. (Mot. 9 n.10.) Through the reissue application, Counterclaim Defendants also seek to amend claims 1 and 7 of the '123 Patent. These amendments, in conjunction with three proposed additional claims, serve to clarify the patented method whereby unwanted organisms found in a ship's ballast are killed. (Documentary Ev. Ex. 7 at 50, 51, and 57.) A PTO finding with respect to these amendments will likely assist the Court in claim construction. Defendants challenge the '123 Patent's validity and allege that Counterclaim Defendants intentionally failed to disclose prior art that was material to patentability. (SAC ¶ 62.) The PTO may not address Counterclaim Defendants' alleged inequitable conduct. See 27 C.F.R. § 1.291(e) ("Where a protest raising inequitable conduct issues satisfies the provisions of this section for entry, it will be entered into the application file, generally without comment on the inequitable conduct issues raised in it."); MPEP § 2012 ("The examiner is **not to make any investigation** as to the lack of deceptive intent requirement in reissue applications."). Nevertheless, the PTO will determine whether the prior art in question is material to patentability. This determination will help to limit issues and defenses with respect to Plaintiffs' claims and Defendants' Counterclaims.

### IV. CONCLUSION

Counterclaim Defendants' Motion to Stay is GRANTED. The Court orders the parties to submit a joint status report on the reissue proceedings every 90 days. Counterclaim Defendants are to pursue their application vigorously, respond timely to all requests from the PTO, etc. The Court will reconsider its ruling if it perceives any delay caused by Counterclaim Defendants. Counterclaim Defendants are ordered to disclose to the PTO all prior art cited in Defendants' pleadings no later than January 22, if they have not already done so. Failure to do so will cause the stay to be vacated.

